IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **PHILIP BAILEY**, *on behalf of himself and all others similarly situated,*<br><br>    *Plaintiff,*<br><br>    v.<br><br>**EDFINANCIAL SERVICES, LLC**,<br><br>    *Defendant.* | **Civil Action No.**<br><br>**CLASS ACTION COMPLAINT** |

## I.   PRELIMINARY STATEMENT

1. Plaintiff Philip Bailey brings this lawsuit on behalf of himself and federal student loan borrowers like him because of Defendant's widespread violations of section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

2. Defendant, a federal student loan servicer, regularly provides information about student loan borrowers' accounts to consumer reporting agencies (singular, "CRA").

3. Defendant also routinely transfers federal student loans like Plaintiff's to other entities for a variety of reasons, including for Total and Permanent Disability discharge eligibility review, which is available to borrowers like Plaintiff who are unable to repay their federal student loans due to disability.

4. As Defendant knows or should know, after it stops servicing student loans and transfers the servicing rights to another servicer, it should report a $0 balance for those accounts, as no money remains owing to it.

5. Instead, when it transfers the servicing rights to another entity, Defendant does not report the balance to the CRAs as $0, as it should. Rather, it reports the outstanding balance at the time of the transfer.

6. Defendant also knows or should know that borrowers who have been granted a Total and Permanent Disability discharge of their federal student loans owe no money to any entity in connection with the discharged loans, and that it should report a $0 balance for those accounts to the CRAs.

7. Instead, even after a borrower is granted a Total and Permanent Disability discharge of their federal student loans, Defendant continues to report the outstanding balance at the time of transfer to the CRAs.

8. Later, when borrowers like Plaintiff see their transferred and/or discharged federal student loans on their credit reports with balances allegedly owing to Defendant, they often exercise their rights under the FCRA to dispute the erroneous balance information that it provided.

9. Even upon notice of a dispute through one or more CRAs, pursuant to standardized FCRA dispute processing procedures, Defendant routinely and as a matter of practice fails to reduce the nonexistent balances of transferred

and/or discharged federal student loans to $0 and continues to report the pre-transfer balances as open and owing.

10. As a result of Defendant's conduct, Plaintiff and members of the Class and Subclass he seeks to represent falsely appear on their credit reports to owe the amount of the transferred and/or discharged student loan debt and suffer injury and damages in the form of harm to credit reputation and credit score, lost credit opportunities, and waste of time and resources lodging futile disputes and trying to correct Defendant's false credit reporting.

11. Defendant's common course of conduct and legal violations entitle Plaintiff and those he seeks to represent to statutory damages, actual damages, punitive damages, and attorneys' fees and costs under the FCRA.

## II. JURISDICTION & VENUE

12. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

13. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## III. THE PARTIES

14. Plaintiff Philip Bailey is a natural person and resident of Dallas, Georgia. At all relevant times, he was a "consumer" as defined by FCRA section 1681a(c).

3

15. Defendant EdFinancial Services, LLC ("EdFinancial") is a Nevada limited liability company that regularly conducts business in the State of Georgia. Its principal place of business is located at 298 N. Seven Oaks Dr., Knoxville, Tennessee. At all relevant times, Defendant was a "person" as defined by FCRA section 1681a(b).

## IV. **FACTUAL ALLEGATIONS**

*Applicable Legal Framework*

16. "Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (citing 15 U.S.C. § 1681).

17. FCRA-covered entities must follow procedures in reporting consumer credit information that both "meet[ ] the needs of commerce" and are "fair and equitable to the consumer." *Saunders v. Branch Banking and Tr. Co. of Virginia*, 526 F.3d 142, 147 (4th Cir. 2008) (quoting 15 U.S.C. § 1681(b)).

18. In addition to well-known CRAs like Equifax, Experian, Trans Union, and Innovis, the FCRA regulates the conduct of "furnishers of information," entities such as Defendant that provide—or "furnish"— information about consumers to CRAs.

19. If a consumer disputes "the completeness or accuracy of any item of information contained in [his or her] file at a [CRA]," the FCRA requires the CRA to take several affirmative steps. *See* 15 U.S.C. § 1681i(a)(1)(A).

20. Relevant here, the CRA that receives the consumer's dispute must "provide notification of the dispute to [the furnisher] who provided any item of information in dispute" [to the CRA] and "shall include all relevant information regarding the dispute that the [CRA] has received from the consumer[.]" 15 U.S.C. § 1681i(a)(2).

21. After receiving notice of the consumer's dispute from the CRA, a furnisher such as Defendant must "conduct an investigation with respect to the disputed information[,] . . . review all relevant information provided by [the CRA, and] report the results of the investigation to the [CRA]." 15 U.S.C. § 1681s 2(b)(1)(A)-(C).

22. The FCRA accordingly requires that a furnisher of credit information such as Defendant to "conduct a reasonable investigation of [its] records to determine whether the disputed information can be verified." *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004); *Saunders*, 526 F.3d at 148 (the "FCRA requires furnishers to determine whether the information that they previously reported to a CRA is 'incomplete or inaccurate.'") (citation omitted).

23. If the disputed information "is found to be inaccurate or incomplete or cannot be verified after any reinvestigation," the furnisher must promptly "modify that item of information," "delete that item of information," or "permanently block the reporting of that item of information." 15 U.S.C. § 1681s 2(b)(1)(E)(i)-(iii).

24. Furthermore, "[i]f the completeness or accuracy of any information furnished by any person to any [CRA] is disputed to such person by a consumer, the person may not furnish the information to any [CRA] without notice that such information is disputed by the consumer." 15 U.S.C. § 1681s-2b(a)(3).

25. Circuit courts have repeatedly held that, upon receipt of notice of a dispute through a CRA, a furnisher must correct inaccurate information and minimally mark disputed accounts as "disputed." *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162-63 (9th Cir. 2009) (citing *Saunders*, 526 F.3d at 150); *see also Seamans v. Temple Univ.*, 744 F.3d 853, 867 (3d Cir. 2014) (a furnisher violates FCRA section 1681s-2(b) "when, having received notice of a consumer's potentially meritorious dispute, [it] subsequently fails to report that the claim is disputed.").

26. The complete and accurate furnishing of information about consumers is important because even small errors can disproportionately influence the cost of certain services, such as mortgages, automobile loans, and credit cards.

6

27. Relatedly, designating disputed information as "disputed" is similarly important because "when a furnisher responds to a dispute verification form and relates an ongoing dispute, [a CRA] does not include the derogatory information in assessing the credit score." *Saunders*, 526 F.3d at 150.

*Defendant's Relevant Business Practices*

28. Defendant is a student loan servicer for the Department of Education.

29. In the normal course of business, Defendant maintains detailed business records concerning, *inter alia*, student loan borrowers' account balances and repayment histories ("Student Loan Information").

30. Defendant routinely furnishes Student Loan Information to CRAs, including Experian, Equifax, and Trans Union, making it a "furnisher of information" as contemplated by the FCRA.

31. Defendant routinely transfers the servicing of federal student loans to other entities for various reasons, including for the purpose of evaluating borrowers' eligibility for Total and Permanent Disability discharge.

*Plaintiff's Experience*

32. Between 2014 and 2017, Plaintiff obtained federal student loans to pursue his education.

33. Prior to approximately January 2023, Defendant was the servicer of Plaintiff's federal student loans.

34. On or about February 14, 2023, Defendant transferred the servicing of Plaintiff's student loans to the Missouri Higher Education Loan Authority ("MOHELA").

35. After Defendant transferred servicing of Plaintiff's federal student loan accounts, those accounts with Defendant were closed and Defendant acknowledged that the balance due it on those accounts was $0.

36. Accordingly, Defendant should have reported to the CRAs that the balances of Plaintiff's transferred student loans due to Defendant was $0 but it did not do so.

37. Subsequently, Plaintiff discovered that Defendant was reporting in consumer reports that Plaintiff had federal student loan accounts due to Defendant with a total balance of more than $100,000.

38. This was false. Plaintiff did not have any open accounts with Defendant and did not owe it any amount for any student loan.

39. Furthermore, because MOHELA was also reporting identical balance information to the CRAs, Defendant's duplicate reporting created the false impression that Plaintiff owed more than $200,000 in student loans when he did not.

40. Plaintiff disputed Defendant's false, duplicative balances through Experian, a CRA, several times in 2023.

41. Pursuant to Experian's independent statutory obligation to notify the furnisher of disputed information upon receipt of a consumer's dispute of that information under FCRA section 1681i(a)(2), it provided notice of Plaintiff's disputes to Defendant.

42. Nevertheless, in response to Plaintiff's disputes, Defendant repeatedly failed to correct or reduce the allegedly outstanding balances to $0 and to fulfill its other obligations under FCRA section 1681s-2(b). Instead, it continued to report that Plaintiff owed more than $100,000 in federal student loans.

43. Also in 2023, Plaintiff made a request for Total and Permanent Disability discharge of his eligible federal student loans to MOHELA, his then-current loan servicer.

44. MOHELA accordingly transferred the servicing of Plaintiff's student loans to Nelnet, the U.S. Department of Education's appointed servicer that processes all requests for Total and Permanent Disability discharge.

45. On or about September 25, 2023, the Department of Education granted Plaintiff a Total and Permanent Disability discharge of his federal student loans. In related correspondence dated September 25, 2023, Nelnet stated that his outstanding balance was $0.

46. Once Plaintiff's federal student loans were discharged, the outstanding balance on those loans was $0. Therefore, Plaintiff did not owe any amount to any entity in connection with the discharged federal student loans.

47. After his federal student loans were discharged, Plaintiff discovered that Defendant was still reporting that he had "open" federal student loan accounts with total balances of approximately $100,000.

48. As before, this was false. Plaintiff did not have any open accounts with Defendant and did not owe any entity any amount for a student loan.

49. On again, Plaintiff disputed Defendant's false balances of his discharge loans through a CRA, Experian, several times in late 2023 and 2024.

50. Pursuant to its independent statutory obligation to notify the furnisher of disputed information upon receipt of a consumer's dispute of that information under FCRA section 1681i(a)(2), Experian provided notice of Plaintiff's disputes to Defendant.

51. Nevertheless, in response to Plaintiff's disputes in November of 2023, December of 2023, January of 2024, and February of 2024, Defendant failed to correct or reduce the allegedly outstanding balances to $0 and to fulfill its other obligations under FCRA section 1681s-2(b). Instead, it continued to report that Plaintiff owed more than $100,000 in federal student loans.

52. As a result of Defendant's conduct, Plaintiff and members of the Class and Subclass suffered injury and damages in the form of lost credit

10

opportunities, harm to credit reputation and credit score, and waste of time and resources.

53. Defendant has long been aware of the problem of duplicative balance reporting after the servicing transfer of federal student loans. Indeed, this problem has garnered the attention of the Department of Education, the Consumer Financial Protection Bureau, and the media. According to recent reporting in the Washington Post,[1] the Department of Education "said it has received about 500 credit reporting complaints since December" concerning the reporting of student loan balances not owed to the reporting servicer.

54. At all relevant times, Defendant acted through its duly authorized agents, and/or employees with respect to the above-alleged conduct.

55. At all relevant times, Defendant willfully or negligently violated the requirements of FCRA section 1681s-2(b).

## V. CLASS ALLEGATIONS

56. Plaintiff seeks to represent the following Class and Subclass:

**Transferred Servicing Class**

For the period beginning two years prior to the filing of the complaint in this matter until the date of the Court's class certification Order, individuals with an address in the United States and its Territories who (1) had federal student loan(s) serviced by Defendant; (2) which federal student loan(s) were

---

[1] Danielle Douglas-Gabriel, *How a paperwork glitch is hurting student loan borrowers' credit scores*, THE WASHINGTON POST, May 29, 2024, *available at* https://www.washingtonpost.com/education/2024/05/29/student-loan-balance-duplicates-credit-reports/.

11

transferred to another servicer; and (3) after which transfer, Defendant received notice from a consumer reporting agency of the individual's dispute concerning those federal student loan(s); but (4) in responding to the consumer reporting agency's notice of dispute, Defendant failed to report a $0 balance for those federal student loan(s).

### Discharged Loan Subclass

For the period beginning two years prior to the filing of the complaint in this matter until the date of the Court's class certification Order, individuals with an address in the United States and its Territories who (1) had federal student loan(s) serviced by Defendant; (2) which federal student loan(s) were transferred to another servicer and discharged; and (3) after which discharge, Defendant received notice from a consumer reporting agency of the individual's dispute concerning those discharged federal student loan(s); but (4) in responding to the consumer reporting agency's notice of dispute, Defendant failed to report a $0 balance for those discharged federal student loan(s).

57. Plaintiff reserves the right to amend the above definitions based upon developments in discovery or as otherwise appropriate and permitted.

58. Members of the Class and Subclass are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendant, Plaintiff avers upon information and belief that they minimally number in the hundreds.

59. There are questions of law and fact common to the Class and Subclass that predominate over any questions affecting only individual Class members. The principal questions concern whether Class members disputed inaccurate information that Defendant had furnished to a CRA about them; whether Defendant failed to correct the disputed information; whether

12

Defendant failed to instruct the CRA to mark the disputed information as "disputed;" whether Defendant's conduct was negligent, willful, or reckless; and whether members of the Class are entitled to statutory damages, actual and/or punitive damages, and in what amounts.

60. Plaintiff's claims are typical of the claims of Class members, which all arise from the same operative facts and are based on the same legal theories.

61. Plaintiff will fairly and adequately protect the interests of the Class and Subclass. Plaintiff is committed to vigorously litigating this matter. Further, Plaintiff has secured counsel who are experienced in handling FCRA and other consumer class actions. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this claim.

62. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class and Subclass would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Class and Subclass, as well as a risk of adjudications with respect to individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

63. A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Class and Subclass's claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of Class and Subclass members may be derived from Defendant's records.

## VI. CLAIMS FOR RELIEF

### COUNT ONE

**On Behalf of Plaintiff and Members of the Class and Subclass for Defendant's Violation of 15 U.S.C. § 1681s-2(b)**

64. Plaintiff incorporates the foregoing paragraphs as though set forth at length herein.

65. After receiving notice from one or more CRAs of Plaintiff's and Class and Subclass members' disputes of inaccurate information that Defendant had previously furnished to the CRA about them, Defendant negligently or willfully failed to report a $0 balance, correct the inaccurate information, and fulfill all of its duties under FCRA section 1681s-2(b).

66. Defendant is liable to Plaintiff and members of the Class and Subclass for all relief available pursuant to FCRA sections 1681n and 1681o.

## VII. JURY TRIAL DEMAND

67. Plaintiff demands trial by jury on all issues so triable.

## VIII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays this Honorable Court grant him and members of the Class and Subclass the following relief:

A.  certifying the proposed Class and Subclass under Federal Rule of Civil Procedure 23 and appointing Plaintiff and his counsel to represent them;

B.  awarding actual damages pursuant to 15 U.S.C. § 1681n(a) & o(a);

C.  awarding statutory damages in the amount of not less than $100 and not more than $1,000 per violation pursuant to 15 U.S.C. § 1681n(a);

D.  awarding punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E.  awarding costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o; and

F.  awarding such other and further relief as may be necessary, just, and proper.

Dated: June 6, 2024                     Respectfully submitted,

PHILIP BAILEY, *individually, and on behalf of all others similarly situated*,

By:  */s/Jeffrey B. Sand*
Jeffrey B. Sand
Andrew L. Weiner
WEINER & SAND LLC
800 Battery Avenue SE, Suite 100
Atlanta, GA 30339
T: (404) 205-5029
T: (404) 254-0842
F: (866) 800-1482
js@wsjustice.com

15

aw@wsjustice.com

James A. Francis (*pro hac vice* forthcoming)
John Soumilas (*pro hac vice* forthcoming)
Jordan M. Sartell (*pro hac vice* forthcoming)
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
jsartell@consumerlawfirm.com

*Attorneys for Plaintiff*